## Ross *v.* The Union Cement and Lime Company.

[No. 3,216.   Filed November 2, 1900.]

MASTER AND SERVANT.—*Action by Quarry Employe for Personal Injuries.*—*Fellow Servant.*—Plaintiff was employed to keep the floor of a quarry tunnel free from small rocks, under the direction of defendant's foreman. The rocks to be cleared away were such as would be thrown out from time to time by blasting. Two days before plaintiff was injured, a large rock was thrown out by a blast and was

supported in a dangerous position by smaller rocks thrown out in the same manner. Some of the loose rocks supporting the large one were removed by the foreman, and while plaintiff was working in the line of his duty the stone fell on and injured him. *Held,* that the foreman was a fellow servant of plaintiff, and that there could be no recovery.

From the Floyd Circuit Court. *Affirmed.*

*Evan B. Stotsenburg,* for appellant.

*M. Z. Stannard,* for appellee.

BLACK, J.—This was an action commenced in the Clark Circuit Court, from which, after an issue had been formed by an answer in denial, the venue was changed to the court below, where upon trial by jury a general verdict was returned in favor of the appellant, who was the plaintiff. With the general verdict the jury returned answers to interrogatories, and the court sustained the appellee's motion for judgment in its favor upon the special finding of facts, and gave judgment accordingly.

The complaint, after preliminary averments, showed that the appellant was employed by the appellee to work as a laborer in its quarry, consisting of tunnels, shafts and mines in the ground, his duty consisting of loading stone into cars and of keeping the floor of the quarry clear and free from small rocks and spawls; that on the 23rd of May. 1898, the appellee without the knowledge of the appellant left a large rock in the tunnel, standing on a loose foundation of broken stones; that said rock weighed about 1,000 pounds and was not propped or in any way protected from falling, and it had been so suffered to be and remain in said condition for forty-eight hours before the appellant was injured as hereinafter stated; that the appellant had no knowledge of the dangerous position or condition of said rock, but while he was engaged in the business of cleaning up the floor of said tunnel, under the order and direction of the foreman of the appellee, and without any fault of the appellant, said rock, being without props or other ap-

pliances to prevent it from falling, fell over upon the appellant, crushing and pinning him to the ground, etc., his injuries being stated, etc.

No question in relation to the pleadings is presented. The facts specially found by the jury in answer to interrogatories were in substance as follows: The appellant when injured was working in the appellee's tunnel, and had worked at loading stone for five weeks before that time. He had worked at loading rock in cars in the open face quarry before working in the tunnel, and he had worked at picking up loose stone from the floor of the tunnel and placing the same in cars for three weeks before the injury. It was the custom of the appellee to blast rock in its tunnel by means of explosives. The blasting threw quantities of loose rock on the floor of the tunnel, and it was the appellant's duty, when a quantity of rock had been thrown out on the floor of the tunnel by means of blasts, to load portions of said rock into cars. He had been engaged in loading into cars loose rock thrown on the floor of the tunnel by means of blasts for three weeks before the date of his injury, and he was so engaged when injured as complained of. The rock which fell upon and injured the appellee was thrown out by one of the blasts. It stood on edge supported by other loose rocks thrown out by the blasts. The appellant was loading rock in a car near this stone for two hours before he was injured. In loading loose rock into cars, the appellant, before he was injured, picked up loose rock from the floor of the tunnel near the point where the rock stood which fell upon and injured him. In cleaning the floor of the tunnel before the stone fell, the appellant did not remove any portion of the loose rock supporting the stone which fell upon and injured him, and it was not his act in removing a portion of the loose stone which supported the stone which fell upon him that caused it to fall. In cleaning the floor of the tunnel, Frank Woerle, appellant's boss,

removed a portion of the loose rock supporting the stone which fell upon and injured the appellant, and it was the act of the appellant's boss, Frank Woerle, in removing a portion of the loose stone which supported the stone which fell upon the appellant that caused it to fall. The jury answered, "unknown," to the question, "Would the stone which fell upon plaintiff have continued to stand in its upright position if none of the loose stone supporting it had been removed?" A like answer was returned to the question, "Would the stone which fell upon the plaintiff have continued to stand in its upright position, without props or other appliances to prevent it from falling, if the loose stone on which it was standing had not been removed?" It was further found specially, that Lewis Girdler was the general superintendent in charge of the appellee's mill, quarries and tunnels; that Peter Eagan was the foreman in charge of appellee's quarries and tunnels, and that Frank Woerle was the boss of the crew with which the appellant was working at the time he was injured; that Frank Woerle, in acting as boss in the tunnel, acted under the order of Peter Eagan, the foreman of appellee's quarries and tunnels, and that Peter Eagan, in acting as foreman of appellee's quarries and tunnels, acted under the orders of Lewis Girdler, the appellee's general superintendent; that Frank Woerle, did not, in addition to acting as tunnel boss, on the day the appellant was hurt and before he was hurt, assist the appellant and the other loaders in loading cars; that Frank Woerle, in addition to acting as tunnel boss, on the day appellant was hurt, and before he was hurt, did assist the sledgers in sledging stone; that it was the duty of the crew of men working under tunnel boss Woerle to break up and remove the stone which fell upon and injured the appellant; and that the appellee's tunnel was lighted by electric light.

In all matters as to which the special findings are silent, no inference may be indulged against the general verdict;

and to override the general verdict, the special findings as to some material fact or facts expressly found must be irreconcilably inconsistent with the general verdict, in favor of which all inferences must be indulged that might legitimately be drawn from any evidence admissible under the issues tried, except so far as expressly modified and controlled by the special findings.

The action was one at common law, and not under the statute relating to the liability of corporations for personal injuries to their employes. It proceeded upon the theory that the employer was responsible by reason of failure to provide a reasonably safe place for the employe in which to work; and the question presented by the appellee's motion for judgment is whether the special findings show that the appellant's injury was occasioned, not by such fault of the appellee, but through the act or omission of a fellow servant while serving as such, or from other cause the danger from which was assumed by the appellant as an ordinary risk of the service.

It is a familiar doctrine, upon which we need not here enlarge, that the employer, in this instance a corporation and therefore acting only through officers, agents and employes, can not be relieved of the duty of providing reasonably safe places and appliances for the work of the employe by casting it upon the employer's officer, agent or servant, and that where this duty is so entrusted the agent's negligence is that of the master.

It is alike familiar law, that a master is not liable to one of his servants for injuries sustained by the latter through the negligence of a fellow servant or any other assumed risk, and that servants engaged in the same general line of duty are fellow servants though one may be superior and the other subordinate and under the immediate direction and control of the former.

The special findings account for the manner and method in which the stone which fell upon the appellant came to be

in its situation, position and condition of dangerousness in the tunnel, and also for the immediate cause of its fall. It was thrown into its place by blasting, which was an ordinary method of carrying on a part of the general work in which the appellant was one of the employes. That such a rock should be thus put in such a place was not a part of furnishing a place to work by the master, in the sense of the rule above mentioned, but was a part of the work to be done in the tunnel, within the scope of the business in which the appellant was engaged. No fault could be attributed to the master with relation to the servants thus engaged from the mere fact that such a rock was thus cast into such a situation and position.

The inquiry then is narrowed to the question whether the tunnel boss, Woerle, in removing a portion of the loose rocks, whereby the large stone was caused to fall, was representing the master in providing a place to work or was engaged in the performance of his work as a co-employe or fellow servant of the appellant. Though superior in rank to the appellant, Woerle could not be regarded as acting as a vice-principal, if he appears not to have such authority in the premises, but to have been, in the act in question, acting as a servant of the appellee engaged in the same general line of duty with the appellant.

The large stone thrown out by the blasting and the loose rocks supporting it and in its neighborhood constituted material on which it was the duty of employes to perform labor in the general employment of preparing stone for the manufacture of cement, in which general employment the appellant was engaged at work with others, the services of all of them in various capacities being directed to the accomplishment of one general result; and the act of one of these employes in the course of his employment in this common work caused the large stone to fall over when the appellant, engaged in his part of the same general employment, was so situated that the stone fell upon him.

The position of the stone and the manner in which it was supported, constituting parts of the ordinary exigencies of the general work, were not made to appear to the jury to have rendered the place unsafe, as alleged in the complaint, but the stone was caused to fall by the removal of a part of the support by the fellow servant in performing work like that in which the appellant was engaged, clearing the floor of the tunnel, and not in performing work under an employment to prepare a place for the appellant to occupy in the performance of other work of a different character.

What was done by Woerle in the premises was not done by him as the representative of the appellee, so far as the appellant was concerned; it was not done in the discharge of a duty which the appellee owed to the appellant; it was not an act in the performance of what the appellee as master was bound toward the appellant to perform, but it was an act done in the performance of Woerle's service in the capacity of a co-employe of the appellant; and for the manner in which the employes in the tunnel performed the work in which they were engaged in common there the master was not responsible to any of them. See *Dube* v. *Lewiston*, 83 Me. 211, 22 Atl. 112; *Cullen* v. *Norton*, 126 N. Y. 1, 26 N. E. 905; *Brazil, etc., Co.* v. *Cain*, 98 Ind. 282; *Spencer* v. *Ohio, etc., R. Co.*, 130 Ind. 181; *Justice* v. *Pennsylvania Co.*, 130 Ind. 321.

Judgment affirmed.